**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Case No. 4:22-cr-7** |
| | ) | **Hon. Raymond A. Jackson** |
| **STEVE M. COCHRAN,** | ) | |
| | ) | **Sentencing: June 22, 2022** |
| Defendant. | ) | |

## DEFENDANT'S POSITION WITH REGARD TO SENTENCING FACTORS

Steve M. Cochran comes before this Court for sentencing following his guilty plea to making threats to multiple politicians via email over a nine-month period.

To be clear, nothing justifies making threats against politicians whose views may differ from one's political views. In light of the context in which Mr. Cochran committed the underlying offense, his lack of intention to carry out any threat, his personal history and characteristics, and the sentences imposed in other cases involving violations of 18 U.S.C. § 875(c), a sentence of five years of probation would be sufficient but not greater than necessary to satisfy the goals of 18 U.S.C. § 3553(a).

## I.   THE SENTENCING GUIDELINES DO NOT ACCOUNT FOR THE CONTEXT OF MR. COCHRAN'S OFFENSE

The Sentencing Guidelines range is advisory, although the Court must consider the recommended range as one of seven statutory sentencing factors enumerated in 18 U.S.C. § 3553(a).  *See United States v. Booker*, 543 U.S. 220, 259-60 (2005); *see also Kimbrough v. United States*, 552 U.S. 85 (2007) (Sentencing Guidelines are simply an advisory tool to be considered alongside other statutory considerations set forth in 18 U.S.C. § 3553(a)); *Gall v. United States*, 552 U.S. 38

(2007) (same).[1]  The primary directive of § 3553(a) is to "impose a sentence sufficient,

but *not greater than necessary*, to comply with the purposes" of sentencing.  18 U.S.C.

§   3553(a)   (emphasis   added).   The   sufficient-but-not-greater-than-necessary

requirement is often referred to as the "parsimony provision."  This requirement is

not just another factor to be considered along with the others set forth in § 3553(a);

rather, it sets an independent limit on the sentence.  Thus, post-*Booker*, *Kimbrough*

and *Gall*, sentencing courts must impose *the minimum sentence that is sufficient* to

accomplish the objectives of § 3553(a).  *See Gall*, 552 U.S. at 58-60.  at 591 (reversing

Court of Appeals resulting in reinstatement of a probationary sentence where

advisory sentencing range was 30-37 months).

The Supreme Court has further made clear that the Guidelines cannot be used

as a substitute for a sentencing court's independent determination of a just sentence

based upon consideration of the § 3553(a) factors.  *See Nelson v. United States*, 555

U.S. 350 (2009); *Spears v. United States*, 555 U.S. 261 (2009).  "The Guidelines are

not only *not mandatory* on sentencing courts; they are also not to be *presumed*

reasonable." *Nelson*, 555 U.S. at 352 (emphasis in original).  In other words, a

---

[1] The § 3553(a) factors include: (a) the nature and circumstances of the offense and
the history and characteristics of the defendant, (b) the kinds of sentences available,
(c) the Guidelines range, (d) the need to avoid unwarranted sentencing disparities,
(e) the need for restitution, and (f) the need for the sentence to reflect the following:
the seriousness of the offense, to promote respect for the law and to provide just
punishment for the offense, to afford adequate deterrence, to protect the public from
further crimes of the defendant and to provide the defendant with needed educational
or vocational training, medical care, or other correctional treatment.  *See* 18 U.S.C.
§ 3553(a).

sentencing court may not rely on the Sentencing Guidelines range as a default to be imposed unless a basis exists to impose a sentence outside that range. Rather, the court must weigh each of the factors and impose a sentence that is the most lenient sentence needed to serve the goals of § 3553(a).

In this case, the advisory guideline range of 33 to 41 months is greater than necessary to address the sentencing factors and would not represent just punishment in this case. Mr. Cochran's emails were impulsively created (and sent) to essentially vent his frustration during an unprecedented time – the COVID-19 pandemic. He sent the emails without giving any thought to whether they would be read, taken seriously, and result in significant consequences.

Mr. Cochran did not have any specific motivation for committing the crimes. This supports a sentence of probation. His threatening statements were made in response to what he watched on the news about the pandemic which, in a period of social isolation, frustrated him. However, the evidence makes clear that Mr. Cochran had no intention of carrying out his threats and never took any steps beyond sending the emails.

In sum, Mr. Cochran's offense conduct was impulsive and thoughtless behavior, and a sentence within the Guidelines range would be excessive in this case.

## II.    SENTENCING ARGUMENT

### A. A sentence of probation will take into account Mr. Cochran's personal history and characteristics

Now 42 years old, Mr. Cochran was born to married parents in Spartanburg, South Carolina. PSR ¶ 49. Mr. Cochran was a toddler when his parents separated;

his brother was two years older.  After the separation, Mr. Cochran had less contact with his father who was tragically killed during a card game when Mr. Cochran was six years old.  *Id.*  Mr. Cochran's mother then relocated with her sons to Newport News, Virginia. Mr. Cochran's mother met Tim Means who became  a father figure to Mr. Cochran and his brother. *Id.* Mr. Cochran enjoyed a happy childhood in a supportive home.

Though happy at home, Mr. Cochran struggled in school. He stopped attending Menchville High School in Newport News after completing the 11th grade. PSR ¶ 60. A later attempt to obtain his general educational development diploma was not successful. *Id.* ¶ at 61. As noted in Dr. Flower's report[2], Mr. Cochran's cognitive functioning abilities are limited. This was a factor in his commission of the offense.

Mr. Cochran has been employed consistently since he stopped attending school. Mr. Cochran's primary adult occupation has been that of a painter. *See* PSR ¶s 62 – 66. *See also* Exh. 1 - Dr. Flower's report at 2.  He currently works full time for William Barnes Painting in Newport News and is described as a "very good painter and dependable." PSR ¶ 63.  In addition, Mr. Cochran's wife adds that he "goes to work every day" and "has been paying child support every week since March of 2022." Exh. 2.

Sadly, Mr. Cochran's first child was born with cerebral palsy and was blind and deaf.  PSR ¶ 53.  She died within three months of her birth. Mr. Cochran has

---

[2] Dr. Flower's report, Exh. 1, will be filed under seal upon the granting of the defense's motion to file it under seal.

understandably carried this loss with him over the years and it contributed to his substance abuse.

Mr. Cochran married in January of 2006. He and his wife have a teenage son together who has special needs. Mr. Cochran's wife reports that Mr. Cochran's ability to connect with their son has significantly improved since he has been sober and stopped using opioids. PSR ¶ 52. Unfortunately, Mr. Cochran and his wife have been separated since December 2021. However, she remains supportive of Mr. Cochran as evidenced by her letter of support for him. *See* Exh. 2.

Mr. Cochran began drinking alcohol when he was 17 or 18 years old. He increased his drinking in his early 20's. *See* PSR ¶ 58. He also regularly used marijuana as he grew older. In 2016, Mr. Cochran began using, and then abusing, prescription opiates. *Id.* He used them every other day until 2019. *Id.* To his credit, Mr. Cochran began treatment with BHG Treatment Center in Newport News, Virginia, in November 2019. He is prescribed methadone and speaks with a counselor at least two times per month. *Id.*

Mr. Cochran's criminal history is reflective of someone who has battled substance abuse. At age 18, he was convicted of trespassing and petit larceny. PSR ¶ 38. The next year he was found guilty of unauthorized use of a motor vehicle. *Id.* at ¶ 39. Ten plus years later, he was charged with assault and received a finding under advisement and was also found guilty of a capias. *Id.* at ¶ 40. He eventually completed the Community Corrections Program leading to the dismissal of the assault charge. *Id.* His most serious prior conviction is statutory burglary with the intent to commit

larceny in July 2015. *Id.* at ¶ 41. The police reports pertaining to this charge state that Mr. Cochran was intoxicated. As noted in the PSR, Mr. Cochran received a suspended sentence for this conviction and was successfully discharged from supervised probation on July 11, 2016. *Id.*

Importantly, Mr. Cochran has completely accepted responsibility for his offense conduct. When a law enforcement officer from a southern state called Mr. Cochran about the threats to that state's Governor, Mr. Cochran initially denied sending the emails. PSR ¶ 11.[3] However, to his credit, Mr. Cochran called the investigator back and confessed to making the threats. *Id.* When the FBI case agents appeared at Mr. Cochran's house to arrest him on the criminal complaint, he cooperated with the investigation and made statements against his interest. *Id. See also* Exh. 3 – FBI Report (redacted). In addition, Mr. Cochran gave the agents consent to search his cellphone and his residence. *See* Exh. 4 – consent to search form (redacted). Mr. Cochran stated, "I hate what I said" and noted that he was extremely remorseful when interviewed by United States Probation Officer Jeffrey Noll. PSR ¶ 13. Mr. Cochran also told Dr. Flower that he felt "ashamed" for making the threats. Exh. 1 at 2. Significantly, Dr. Flower notes that Mr. Cochran "appears internally motivated by his remorse." *Id.* at 4. Finally, Mr. Cochran's wife notes in her letter that after sixteen years of marriage, "I have never seen this side of him --- very remorseful, very positive and very motivated to do the right thing." Exh. 2.

---

[3] *See* Offense conduct section of the PSR setting forth the Statement of Facts.

**B. A sentence of probation is appropriate given the the nature and circumstances of the offense.**

The nature and circumstances of the offense warrant leniency in this case for two reasons. 18 U.S.C. § 3553(a)(1). First, Mr. Cochran had no intention of carrying out his threats, and he engaged in no conduct toward that end. Second, Mr. Cochran sent the threatening emails in an impulsive and misguided effort to voice his frustration after becoming preoccupied with news reports about various government officials and politicians during the COVID-19 pandemic.[4] As reported by Dr. Flower, Mr. Cochran was socially isolated at his home at the time of his offense conduct. He and his wife lived together but had separated. He was not working regularly because of the pandemic and was home most of the day. He found himself watching news reports about COVID-19. Mr. Cochran had never before taken much interest in politics but became preoccupied with the news coverage about the virus and efforts or perceived lack of efforts to safeguard the public by various politicians. Without any thought to the consequences, he impulsively sent the emails to vent his frustration. He did not think the emails would actually be read as he did not think himself to be anyone important.

More importantly, however, Mr. Cochran had no intention of following through with the threats. And there is no information or evidence to suggest that Mr. Cochran was expressing sincere intent to commit actual acts of violence against anyone.

---

[4] To be clear, Mr. Cochran is not suggesting his statements were protected First Amendment speech. Mr. Cochran acknowledges that his statements were not protected.

Indeed, Mr. Cochran did not own a gun or weapons, and did not track or stalk any of the individuals he threatened. The absence of any intent to carry out the threats counsels leniency in Mr. Cochran's sentence.

### C. A sentence of probation is consistent with other sentences imposed in this District.

The Court must also consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. §3553(a)(6).

Individuals in this District who have engaged in conduct like Mr. Cochran's have received sentences of probation. In *United States v. Jones*, for example, the defendant pleaded guilty to one count of making a threatening statement to a DEA agent and received a sentence of time served. No. 1:14-cr-12 (E.D. Va.) (ECF Nos. 31, 32). Similarly, in *United States v. Turner*, the defendant received a sentence of one year probation after pleading guilty to one count of making threatening statements to United States military personnel at the Pentagon. No. 1:14-cr-58 (E.D. Va.) (ECF Nos. 24, 27). In other criminal threats cases, the defendants were permitted to plead to misdemeanor offenses. In both *United States v. Leslie* and *United States v. Dalton*, the federal charges were dismissed in favor of a plea to a state misdemeanor, and each defendant received a sentence of probation. *See United States v. Leslie*, No. 1:14-cr-80 (E.D. Va.) (ECF Nos. 1, 8); *United States v. Dalton*, No. 1:14-cr-57 (E.D. Va.) (ECF No. 53).

Some of the defendants in those cases exhibited mitigating factors that do not apply to Mr. Cochran. For example, the defendant in *Dalton* suffered from severe

mental health issues.  No. 1:14-cr-57 (E.D. Va.) (ECF No. 51) (describing finding of incompetence).  But other aspects of those cases suggest conduct more serious than Mr. Cochran's.  For example, the defendant in *Leslie* was charged with making a bomb threat in addition to communicating threats under § 875(c).  He had threatened to throw a grenade on stage during a music concert.  No. 1:14-cr-80 (E.D. Va.) (ECF No. 1).  Still, that defendant received a sentence of probation after pleading to a state misdemeanor.  The sentences imposed in these cases therefore suggest that a sentence well below the guideline range is appropriate here.

**D. A probationary sentence will sufficiently deter Mr. Cochran and others from engaging in similar conduct in the future.**

While "custodial sentences are qualitatively more severe than probationary sentences of equivalent terms[,] . . . . [o]ffenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty." *Gall v. United States*, 552 U.S. 38, 48 (2007).  In this case, a sentence of probation is appropriate given that Mr. Cochran is extremely unlikely to repeat this behavior and has been more than specifically deterred.

In addition, there is no evidence that imposing a prison sentence in this case would promote deterrence.  Indeed, as the National Institute of Justice, the DOJ's research arm in the Office of Justice Programs, stated in a publication about deterrence, "prison sentences are unlikely to deter future crime . . . . [and] may have the opposite effect."  NIJ, Office of Justice Programs, Department of Justice, *Five Things About Deterrence* (July 2014).

In sum, all of the circumstances of this case –from the impulsive nature of the offense conduct, committed during an extraordinary time of frustration and isolation to the absence of any indication that Mr. Cochran sought to carry out any threat, to the treatment of other offenders in this District – counsel in favor of a sentence well below the guideline range and specifically for a sentence of probation. Such a sentence would be sufficient, but not greater than necessary, to accomplish the purposes of sentencing in this case.

## CONCLUSION

For the foregoing reasons, Mr. Cochran respectfully requests a sentence of five years of probation.

Respectfully submitted,

STEVE M. COCHRAN

By: _____/s/_____
Keith Loren Kimball
VSB No. 31046
Supervisory Assistant Federal Public
Defender
Attorney for Steve M. Cochran
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
Telephone:  757-457-0870
Telefax:  757-457-0880
Email: keith_kimball@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of June, 2022, I filed this pleading with

the Clerk of Court using the CM/ECF system, which will then send a notification of

such filing (NEF) to all counsel of record.

I further certify that I have sent a copy of this pleading, via electronic mail,

to:

Jeffrey Noll, Senior United States Probation Officer
Email:  Jeffrey_Noll@vaep.uscourts.gov


                                        /s/
                              Keith Loren Kimball
                              Virginia State Bar No. 31046
                              Supervisory Assistant Federal Public
                              Defender
                              Attorney for Steve M. Cochran
                              Office of the Federal Public Defender
                              150 Boush Street, Suite 403
                              Norfolk, Virginia 23510
                              Telephone:  (757) 457-0800
                              Telefax:  (757) 457-0880
                              Email: keith_kimball@fd.org